NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| HENRY POOLE, | : |
| Petitioner, | :  Civil Action No. 09-1929 (DMC) |
| v. | :  O P I N I O N |
| STATE OF NEW JERSEY, et al. | : |
| Respondents. | : |

APPEARANCES:

Henry Poole, Pro Se
#235909C-4709
Albert C. Wagner Youth
 Correctional Facility
P.O. Box 500, Ward Ave.
Bordentown, NJ 08505

Meredith L. Balo, Esq.
Union County Prosecutor's
 Office
32 Rahway Ave.
Elizabeth, NJ 07202
Attorney for Respondents

CAVANAUGH, District Judge

Petitioner Henry Poole, a prisoner currently confined at the Albert C. Wagner Youth Correctional Facility, in Bordentown, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondents are the State of New Jersey, the Attorney General of New Jersey, and Mr. Kandell.

For the reasons stated herein, the petition must be denied.

BACKGROUND

A.   Factual Background

The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division ("Appellate Division").[1]

On October 14, 2000, at 3:40 a.m., Ron Negron was standing on the sidewalk on Third Street in Elizabeth talking on a public telephone.  He was approached by three men who asked him if he "knew where they were selling marijuana."  He said he did not.  The men asked him if he had any money and the three men then jumped him, grabbed his left arm and one man pressed a knife to his neck.  The man with the knife lifted it up and Negron saw that it was gold in color.  Negron told them he only had seven dollars and he was going to give it to them.  They pulled him around the corner and into the dark where they went through his pockets.  The attackers tried to take Negron's boots off, but he was able to push them away and run.  As he fled, one of the attackers grabbed his wallet, which was on a chain.  As Negron ran away, he saw the men get into a light colored small truck being driven by a fourth male. Negron memorized the plate number on the truck.  He ran to his car and wrote the license number down on his hand.

Negron waited about ten minutes, then he started to drive away.  As he was driving, he saw the light colored truck again.  He confirmed that the truck had the same license plate number and he noticed that there were four occupants.  He yelled and the truck sped away, turning at the next corner, which was a one-way street.  As the truck traveled down the one-way street

_____

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

in the wrong direction, it was stopped by police
officers in a marked vehicle.

As Officer John Cockinos and his partner
approached the truck which had been illegally driving
on the one-way street, they saw four men seated in the
truck.  Poole was in the right rear passenger side
seat, Feliciano in the rear on the driver's side, Colon
was in the front passenger seat and Santos in the
driver's seat.  Before Officer Cockinos was able to
speak with the occupants of the truck, Negron ran up to
the officer, yelling that the occupants of the truck
had just robbed him with a knife.  He told them he had
written down the truck's license plate number.

The four males were removed from the truck.  The
officer searched the truck and found a knife behind the
rear seat.  Two forms of Negron's identification, a
driver's license and a B.J.'s card, were found in the
glove box.  The knife was shown to Negron who
identified it as the one used in the robbery.  Negron
also identified his driver's license and B.J. card as
having been in his wallet when the men took it.  After
Feliciano had been taken out of the truck, the officer
noticed that his fist was clenched.  He ordered
Feliciano to open his hand which contained one five
dollar bill and two one dollar bills.  That was
precisely the amount Negron said was taken from him.
Negron identified Feliciano as the man who had held the
knife.

At trial, Negron was unable to identify any of the
defendants.  However, he testified that he identified
at the time of arrest, not only Feliciano who held the
knife, but in addition, two of the others as the men
who had strong-armed him.  Officer Cockinos, who was
the only other witness to testify at trial, confirmed
that Negron had identified Feliciano at the scene, but
according to him, Negron was not able to positively
identify the other attackers.  Cockinos was also unable
to identify any of the defendants in the courtroom.
All four defendants were in the courtroom and there was
no denial that they were the persons arrested by
Cockinos and his partner.

State v. Poole, A-1374-02T4 (App. Div. June 6, 2005), certif.

denied, 186 N.J. 256 (2006).

B.   <u>Procedural History</u>

A Union County Grand Jury returned an indictment charging Petitioner with first-degree robbery; third-degree possession of a weapon, a knife, with an unlawful purpose; and fourth-degree possession of a prohibited weapon, a switchblade knife, all in violation of New Jersey state law.

Petitioner was tried before a jury on May 14-15, 2002.  On May 15, 2002, the jury returned a verdict of guilty on counts one and two (robbery and possession of a weapon for an unlawful purpose).

On September 6, 2002, the judge imposed a sentence of 13 years imprisonment with an 85% parole bar pursuant to the No Early Release Act (NERA).  Petitioner appealed.  On June 6, 2005, the Superior Court of New Jersey, Appellate Division ("Appellate Division") affirmed the conviction and sentence.  Petitioner filed a petition for certification with the New Jersey Supreme Court, which was denied on February 16, 2006.

On June 15, 2006, Petitioner filed a motion for post-conviction relief (PCR) in the sentencing court.  The motion was denied on October 2, 2007.  Petitioner appealed the denial, and on January 8, 2009, the Appellate Division affirmed the denial. Petitioner's petition for certification to the New Jersey Supreme Court was denied on April 2, 2009.

4

Petitioner filed this habeas petition on April 24, 2009. Petitioner was advised of his rights pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), on May 13, 2009. Thereafter, Petitioner filed an Amended Petition, and on August 4, 2009, an Order to Answer was issued to Respondents. Respondents filed an Answer to the petition and the available state court record on or about September 24, 2009. Petitioner filed replies to the answer on November 17 and 30, 2009.

C.   **Petitioner's Claims**

Petitioner cites fifteen grounds for relief in his amended petition:

1.   Because the state presented no evidence that defendant was identified as one of the robbers, defendant's motion for a judgment of acquittal should have been granted.

2.   Because the state did not prove beyond a reasonable doubt that the defendant was one of the men who robbed the victim, his conviction for robbery and weapon offenses was against the weight of the evidence and must be reversed.

3.   Petitioner was provided with ineffective assistance of counsel at trial.

4.   The judge erroneously instructed the jurors that their role was to determine the guilt or innocence of the defendant, thereby reducing the state burden in proving defendant's guilt beyond a reasonable doubt.

5

5.  The prosecutor violated the defendant's right to a fair
    trial when she told the jury that justice demanded a guilty
    verdict.

6.  Defendant's robbery conviction must be reversed due to the
    trial court's erroneous robbery instruction that directed
    the verdict for the state.

7.  The court's unconstitutional instruction for the presumption
    of innocence violated the Constitution.

8.  The court erroneously instructed on identification.

9.  The court erroneously instructed on trustworthiness.

10. The court erroneously instructed on accomplice liability.

11. The court neutralized the jury to render decision on the
    issue of accomplice liability.

12. The court erroneously instructed the jury that they should
    consider whether or not they should find the defendant
    guilty or not guilty and failed to instruct on lesser
    included offense.

13. [left blank by Petitioner]

14. The PCR court deprived the petitioner of due process.

15. PCR counsel provided petitioner with ineffective assistance
    of counsel.

(Petition, ¶ 12).

It appears that the claims have been exhausted in the state courts. Nonetheless, this Court finds that Petitioner's claims are clearly meritless. Thus, the petition will be denied.[2]

## DISCUSSION

### A.   Standards Governing Petitioner's Claims.

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

_____

[2]   Although a petition for writ of habeas corpus may not be granted if Petitioner has failed to exhaust his remedies in state court, a petition may be denied on the merits notwithstanding Petitioner's failure to exhaust his state court remedies. See 28 U.S.C. § 2254(b)(2); Lambert v. Blackwell, 387 F.3d 210, 260 n.42 (3d Cir. 2004); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003).

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II). A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter). Id. at 407-09. To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. See id. at 409. In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of

8

inferior federal courts.  See Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal case law, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

B.   **Claims Regarding Evidence Presented at Trial (Grounds 1 and 2).**

In Ground One of the petition, Petitioner argues that there was no description of him by the victim that could implicate him in the robbery offense, and therefore, his motion for a judgment of acquittal should have been granted.  In Ground Two of the petition, Petitioner argues that the verdict was against the

9

weight of the evidence, since the state could not prove beyond a reasonable doubt that he was involved in the crimes.

The Appellate Division examined these claims and found that:

> Here, the judge's decision to deny defendant's motion for a judgment of acquittal was proper. Defendant argues that there was no evidence that he was one of the two men, besides Feliciano, that Negron claims attacked him. Negron saw his assailants enter the light colored truck which was driven by a fourth man. When the police stopped the truck shortly after the robbery, defendant was one of the occupants. The court was justified in reasoning, in light of the applicable standard, that a jury could find beyond a reasonable doubt that defendant was also one of the attackers. Only a brief time, approximately ten minutes, had passed. According to Negron, he identified defendants as the men who robbed him. He had seen his attackers get into the light colored truck. He memorized and wrote the license plate number on his hand. He described the knife with which he had been threatened and that knife was recovered by the police from the rear seat that had been occupied by defendant and Feliciano. The police also recovered from the truck Negron's driver's license and his B.J. identification card. In addition, Officer Cockinos recovered seven dollars from Feliciano, which is the amount Negron said was stolen from him. This evidence, through largely circumstantial, was sufficient for a reasonable jury to infer that defendant was one of the assailants. The trial court's decision denying defendant's motion for judgment for acquittal was not error.

See Appellate Division decision, Respondents' Exhibit 3 (Ra3) at pp. 7-8).

A claim that the jury's verdict was against the weight of the evidence raises a due process concern. Only where, "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt" should the writ issue. Jackson v. Virginia, 443 U.S. 307, 319 (1979). This standard must be applied "with explicit reference to the elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324, n.16. See also Orban v. Vaughn, 123 F.3d 727 (3d Cir. 1997), cert. denied, 522 U.S. 1059 (1998). As noted above, state court factual determinations are presumed to be correct. See Werts v. Vaughn, 228 F.3d 178, 186 (3d Cir. 2000).

Here, the evidence, as outlined by the Appellate Division, supports the conviction. It is quite rational that a reasonable fact finder could find Petitioner guilty based on the evidence presented. The fact that Petitioner does not agree with the jury's finding that the state witnesses were credible does not remotely satisfy the standard for finding that the verdict is not supported by sufficient evidence.

Nor does Petitioner demonstrate that his trial was fundamentally unfair. See Keller v. Larkins, 251 F.3d 408, 413 (3d Cir.), cert. denied, 534 U.S. 973 (2001) (finding that for a habeas petitioner to prevail on a claim that an evidentiary error amounted to a deprivation of due process, he must show that the error was so pervasive as to have denied him a fundamentally fair trial). Petitioner has not demonstrated that the actions of the state courts "resulted in a decision that was contrary to, or

11

involved an unreasonable application of, clearly established
Federal law, as determined by the Supreme Court of the United
States," or "resulted in a decision that was based on an
unreasonable determination of the facts in light of the evidence
presented in the State court proceeding."  28 U.S.C. § 2254(d).
Rather, as the evidence was presented to the jury, who decided to
convict Petitioner, it is clear that no fundamental injustice
occurred; rather, the jury assessed the witnesses' credibility,
to the detriment of Petitioner.

C.   **Claims Regarding Ineffective Assistance of Counsel (Ground
     3).**

     In Ground 3, Petitioner argues that trial counsel failed to
object to the many errors by the trial court.

     The "clearly established Federal law, as determined by the
Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), is
the standard for ineffective assistance of counsel as enunciated
in Strickland v. Washington, 466 U.S. 668 (1984).  Under
Strickland, a petitioner seeking to prove a Sixth Amendment
violation must demonstrate that his counsel's performance fell
below an objective standard of reasonableness, assessing the
facts of the case at the time of counsel's conduct.  See id. at
688-89; Jacobs v. Horn, 395 F.3d 92, 102 (3d Cir. 2005); Keller
v. Larkins, 251 F.3d 408, 418 (3d Cir.), cert. denied, 534 U.S.
973 (2001).  Counsel's errors must have been "so serious as to
deprive the defendant of a fair trial, a trial whose result is

12

reliable." <u>Strickland</u>, 466 U.S. at 688.  "In any case presenting

an ineffectiveness claim, the performance inquiry must be whether

counsel's assistance was reasonable considering all the

circumstances." <u>Id.</u>  The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be
> highly deferential.  It is all too tempting for a
> defendant to second-guess counsel's assistance after
> conviction or adverse sentence, and it is all too easy
> for a court, examining counsel's defense after it has
> proved unsuccessful, to conclude that a particular act
> or omission of counsel was unreasonable.  A fair
> assessment of attorney performance requires that every
> effort be made to eliminate the distorting effects of
> hindsight, to reconstruct the circumstances of
> counsel's challenged conduct, and to evaluate the
> conduct from counsel's perspective at the time.
> Because of the difficulties inherent in making the
> evaluation, a court must indulge a strong presumption
> that counsel's conduct falls within the wide range of
> reasonable professional assistance; that is, the
> defendant must overcome the presumption that, under the
> circumstances, the challenged action "might be
> considered sound trial strategy."

<u>Id.</u> at 689 (citations omitted); <u>see</u> <u>also</u> <u>Virgin Islands v.</u>

<u>Wheatherwax</u>, 77 F.3d 1425, 1431 (3d Cir.), <u>cert.</u> <u>denied</u>, 519 U.S.

1020 (1996).

If able to demonstrate deficient performance by counsel, the

petitioner must also show that counsel's substandard performance

actually prejudiced his defense.  <u>See</u> <u>Strickland</u>, 466 U.S. at

687.  Prejudice is shown if "there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.  A reasonable probability

is a probability sufficient to undermine confidence in the

13

outcome." Id. at 694.  The reviewing court must evaluate the

effect of any errors in light of the totality of the evidence.

See id. at 695-96.  Thus, the petitioner must establish both

deficient performance and resulting prejudice in order to state

an ineffective assistance of counsel claim.  See id. at 697; see

also Jacobs, 395 F.3d at 102; Keller, 251 F.3d at 418.

In this case, the state courts examined Petitioner's

ineffective assistance claims in the course of Petitioner's PCR

petition.  Repeatedly citing Strickland, the Appellate Division

rejected Petitioner's ineffective assistance of trial counsel

claims, finding:

> Measured by these well-settled standards, we are
> satisfied that the trial judge had a sound basis to
> reject defendant's various PCR claims.  We are
> persuaded that his trial attorney was not ineffective
> on the matters that have been identified, and also that
> defendant sustained no actual prejudice because of
> those alleged failures.  There was no need for an
> evidentiary hearing before the PCR judge, because
> defendant's claims did not rise to the level of a prima
> facie case warranting additional testimony.  Nor is
> there a prima facie showing that defendant's counsel at
> the PCR hearing was constitutionally ineffective.

(Ra10, at p. 10)(internal citation omitted).

Petitioner's claims that counsel did not properly represent

him are without merit.  As the state courts found, citing

Strickland, a review of the record shows that counsel was

competent and did not perform deficiently.

Further, a review of the closing argument shows that counsel

went through all of the evidence presented and zealously

14

advocated for Petitioner, and tried to convince the jury that there was reasonable doubt in order to acquit Petitioner, and tried to discredit the State's case.  Ms. Carl, Petitioner's attorney, went through the evidence presented by the State and attempted to poke holes in the State's theory that Petitioner was involved in the crime.  See Ra13, pp. 62-67.  Further review of the transcripts shows that Ms. Carl was competent and efficient in her cross-examination of witnesses.  Thus, this Court finds that counsel did not perform deficiently, and that the Strickland standard for habeas relief was not met.

Therefore, as the record reveals that the state courts relied on the Strickland standard in evaluating Petitioner's ineffective counsel claims, Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the actions of the trial court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Petitioner's claims will be denied.

D.   **Claims Regarding Jury Charges (Grounds 4, 6-12).**

Petitioner claims that the trial court erroneously charged on the robbery, presumption of innocence, identification,

15

trustworthiness, accomplice liability, and guilt or innocence charges.

The Appellate Division extensively examined Petitioner's jury charge claims on direct appeal, and found the claims to be without merit.  See State v. Poole, A-1374-02T4 (App. Div. June 6, 2005) at pp. 9-17, certif. denied, 186 N.J. 256 (2006).

Generally, a jury instruction that is inconsistent with state law does not merit federal habeas relief.  Where a federal habeas petitioner challenges jury instructions given in a state criminal proceeding,

> [t]he only question for us is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record.  In addition, in reviewing an ambiguous instruction ..., we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution.  And we also bear in mind our previous admonition that we "have defined the category of infractions that violate 'fundamental fairness' very narrowly."  "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (citations omitted).  Thus, the Due Process Clause is violated only where "the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law."  Smith v. Horn, 120 F.3d 400, 416 (1997).  See also In re

16

Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause
protects the accused against conviction except upon proof beyond
a reasonable doubt of every fact necessary to constitute the
crime with which he is charged"); Sandstrom v. Montana, 442 U.S.
510, 523 (1979) (jury instructions that suggest a jury may
convict without proving each element of a crime beyond a
reasonable doubt violate the constitutional rights of the
accused).

Here, with regard to the burden of proof, the trial judge
charged the jury:

> . . . The burden of proving the identity of
> the person who committed a crime is always
> upon the State.  For you to find each of
> these men guilty, the State must prove beyond
> a reasonable doubt that each of them is the
> person who committed the crime or
> participated in the crime.  They have no
> burden nor duty to show that the crimes, if
> committed, were committed by somebody else,
> or to prove the identity of those other
> persons who might have committed the crimes.

> You must determine, therefore, not only
> whether the State has proven each and every
> element of the crime that is charged beyond a
> reasonable doubt, which I'll get to you
> shortly, but also has the State proven to you
> beyond a reasonable doubt that each of these
> people is the person who either committed or
> participated in the commission of the crimes.

See State v. Poole, A-1374-02T4 (App. Div. June 6, 2005) at pp.
12-13, certif. denied, 186 N.J. 256 (2006).  The trial judge went
on to charge on reasonable doubt, and unanimous verdict, all of
which were upheld under New Jersey law.

17

In this case, the jury charges did not wrongly describe the burden of proof.  Nor did the charge implicate due process concerns.  The state courts did not find any error under state law with the charges, and this Court cannot ascertain any error that would rise to the level of a Constitutional deprivation.

In this case, a review of the record and the jury charge reveals that Petitioner has not demonstrated that his entire trial and conviction was so prejudiced by the charge as to violate the principles of fundamental fairness and due process.  There was ample evidence against Petitioner to justify his conviction.  Petitioner's conviction was neither fundamentally unfair, nor violated due process.  This ground for relief will be denied.

**E.    Claim Regarding Prosecutorial Misconduct (Ground 5).**

In Ground 5, Petitioner argues that the prosecutor misstated evidence in her summation, and told the jury that justice demanded a guilty verdict.

The Appellate Division examined these claims on direct appeal.  With regard to the claim concerning the prosecutor misstating the evidence in her summation, the Appellate Division explained:

> Here, defendant contends that the State violated his right to a fair trial when she inadvertently misstated evidence during the prosecutor's summation. At trial, the victim testified that he stayed at the location where he was robbed for about ten minutes after the robbers left the location, but he saw the

truck a second time as he drove toward his home.  He
testified that he saw a police car stop the truck:

> Q: When you saw the truck for the second time, did
> you ever, lose sight of the truck?
> A: Yes.  They started to speed up, they accelerated and
> they turned at the first corner that they found and it
> was a one-way street.

However, defendant contends when the prosecutor
described this testimony during summation, she
misstated it, telling the jury that the victim never
lost sight of the truck:

> Negron testified that when he saw the car for
> the second time, he followed the car.  He
> never lost sight of the truck.  The truck
> never stopped, no one got out of the truck.
> And when he yelled out the window to him, "I
> have your license plate number," what did the
> truck do.  Juan Negron testified that the
> truck accelerated made a turn, and as the
> officer testified, was going the wrong way
> down a one way street.

Defendant did not object to the prosecutor's
remarks during trial. "Failure to make a timely
objection indicates that defense counsel did not
believe the remarks were prejudicial at the time they
were made.  Failure to object also deprives the court
of the opportunity to take curative action."  Because
defendant did not object at trial, he will prevail on
appeal only if he can demonstrate plain error.  The
judge reminded the jurors "[r]egardless of my
recollection of the facts . . . or the lawyers'
recollection of the facts, if you recollection
individually differs from ours, you must decide this
case only upon how you remember the facts testified
to."  Moreover, based on our review of the record, we
do not perceive any intent on the part of the
prosecutor to mislead the jury.  It appears that the
prosecutor simply misspoke when making her summation.
This mistake was not clearly capable of producing an
unjust result.  Therefore, reversal of the defendant's
conviction is not warranted.

(Ra3 at pp. 20-22)(internal citations omitted).

The United States Supreme Court has recognized the obligation of a prosecutor to conduct a criminal prosecution with propriety and fairness.

> He may prosecute with earnestness and vigor - indeed, he should do so.  But, while he may strike hard blows, he is not at liberty to strike foul ones.  It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one. ...  Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.

Berger v. United States, 295 U.S. 78, 88 (1935).  "The line separating acceptable from improper advocacy is not easily drawn; there is often a gray zone.  Prosecutors sometime breach their duty to refrain from overzealous conduct by commenting on the defendant's guilt and offering unsolicited personal views on the evidence."  United States v. Young, 470 U.S. 1, 7 (1985).

Where a prosecutor's opening or closing remarks are challenged in habeas, "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974)).  In evaluating the likely effect of improper comments, a court may consider whether the improper comments were invited by or responsive to prior comments by opposing counsel.  See Darden, 477 U.S. at 181-82.  Thus, "Supreme Court precedent counsels that the reviewing court must

examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." Moore v. Morton, 255 F.3d 95, 107 (3d Cir. 2001).

In this case, this Court has reviewed the relevant record, the challenged remarks, and the state court's decision. The prosecutor's comments challenged by Petitioner were not so offensive as to infect the entire trial, violate due process, or render his conviction unfair. There was sufficient evidence to convict Petitioner, which was weighed by the jury. In light of the entire trial and with the evidence against Petitioner, the Court is satisfied that the prosecutor's allegedly offensive action did not violate Petitioner's right to a fair trial.

Further, even assuming that the prosecutor's remarks were improper, the judge's jury charge was clear and correct and prevented the prosecutor's remarks from so infecting the trial with unfairness as to make the resulting conviction a denial of due process.

Finally, Petitioner has not demonstrated that the decision of the state courts was either contrary to or an unreasonable application of clearly established federal law. Petitioner is not entitled to relief on this claim.

21

With regard to Petitioner's claim that the prosecutor told
the jury that justice demanded a guilty verdict, the Appellate
Division found:

> Defendant also argues that the prosecution
> deprived him of a fair trial when she suggested to the
> jury that justice demanded a guilty verdict.  At the
> end of her brief summation, the prosecutor stated:
>
>> Ladies and gentlemen of the jury, at the
>> beginning of the trial I told you I would
>> have the opportunity to speak to you again
>> and that I would discuss with you or talk to
>> you about the evidence that we would be
>> presenting to you.  Based on the evidence
>> that you have been presented and the
>> testimony of the police officer and through
>> the testimony of Juan Negron, the State asks
>> that you return a verdict of guilty, it is a
>> verdict which the evidence in this case
>> supports, and it is a verdict in which this
>> case justice demands.
>
> Here, the prosecution did not seek to inflame the
> jurors.  As it was reproduced in the trial transcript,
> her entire summation consisted of only two paragraphs,
> one of which is reprinted fully above.  In context, the
> request that the jurors deliver justice was innocuous.
> It was not a plea that they abandon reason and resort
> to passion or that they serve as instruments of public
> retribution.  This claim of error is devoid of merit.

(Ra3 at p. 22-23).

As noted above, for the reasons set forth by the Appellate
Division, it cannot be said that the prosecutor's comment
concerning justice "so infected the trial with unfairness as to
make the resulting conviction a denial of due process."  The jury
was instructed on verdicts, the burden of proof, and reasonable
doubt, and the challenged statement did not so infect the trial

as to warrant habeas relief or result in a constitutional
violation.   Petitioner is not entitled to habeas relief on this
claim.

F.   <u>Claims Regarding PCR Proceedings (Grounds 14 and 15).</u>

In Ground 14, Petitioner claims that the PCR court deprived
him of due process by omitting arguments from the PCR records of
October 2, 2007, and abused discretion by putting him out of the
courtroom while his claim was argued by PCR counsel.   In Ground
15, Petitioner argues that PCR counsel was ineffective for
inducing the court to disregard his claims and failing to argue
the unconstitutional instructions by the trial court.

Petitioner's claim regarding ineffective assistance of
counsel by PCR counsel is not cognizable in a habeas claim.   <u>See</u>
28 U.S.C. § 2254(i)("The ineffectiveness or incompetence of
counsel during Federal or State collateral post-conviction
proceedings shall not be a ground for relief in a proceeding
arising under section 2254.").

As to Petitioner's claim concerning his PCR proceedings, it
has long been established that habeas corpus relief is intended
only to address claims attacking underlying state convictions,
not matters collateral to those convictions.   <u>See</u> <u>Hassine v.</u>
<u>Zimmerman</u>, 160 F.3d 941, 954 (3d Cir. 1998), <u>cert.</u> <u>denied</u>, 526
U.S. 1065 (1999).   In <u>Hassine</u>, the Third Circuit held that "[t]he
federal role in reviewing an application for habeas corpus is

limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's *collateral* proceeding does not enter into the habeas calculation." Id.; see also Lambert v. Blackwell, 2003 WL 1718511 at *35 (E.D. Pa. Apr. 1, 2003)("Lambert's claims of errors by the [post-conviction relief] court fail to assert viable federal habeas claims," citing Hassine, 160 F.3d at 954); Rollins v. Snyder, 2002 WL 226618 at *5 (D. Del. Feb. 13, 2002)("Rollins' claims based on the Delaware courts' actions in his [post conviction proceedings] are not cognizable on federal habeas review"). Unless state collateral review violates some independent constitutional right, such as the Equal Protection Clause, infirmities in state habeas proceedings are not cognizable under § 2254 and do not warrant federal habeas relief. See, e.g., Rudd v. Johnson, 256 F.3d 317, 319-20 (5th Cir.), cert. denied, 121 S. Ct. 477 (2001); Gerlaugh v. Stewart, 129 F.3d 1027, 1045 (9th Cir. 1997), cert. denied, 525 U.S. 903 (1998); Jolly v. Gammon, 28 F.3d 51, 54 (8th Cir.), cert. denied, 513 U.S. 983 (1994); Steele v. Young, 11 F.3d 1518, 1524 (10th Cir. 1993); Bryant v. Maryland, 848 F.2d 492, 492 (4th Cir. 1988); Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987); Kirby v. Dutton, 794 F.2d 245, 247 (6th Cir. 1986). But see, Dickerson v. Walsh, 750 F.2d 150, 153 (1st Cir. 1984)

(noting prevailing rule and concluding that federal habeas was proper avenue for attacking state post-conviction proceedings).

Therefore, Petitioner's claims regarding his PCR proceedings must be denied.

<u>CERTIFICATE OF APPEALABILITY</u>

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, no certificate of appealability will issue.

## CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, is denied.  The Court further finds that no certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253.

An appropriate Order accompanies this Opinion.


_____
DENNIS M. CAVANAUGH
United States District Judge

Dated: 7/21/10